**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| KAREN F. HOWLAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-05-1051-HE |
| ) | |
| AMERICAN FIDELITY ) | |
| ASSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff is the primary beneficiary of a group accidental death and dismemberment ("AD&D") policy issued and administered by the defendant which covered plaintiff's late husband, Jerry Howland.[1] Mr. Howland died on April 30, 2004, of "acute combined intoxication with hydrocodone and carisoprodol."[2] Pl's. Ex. 2, tab 12, p. 34. After her husband's death, plaintiff submitted a claim for life benefits under a separate policy and a claim for benefits under the AD&D policy. Defendant initially issued three checks payable to plaintiff for the full amount of the AD&D policy plus interest. However, it reversed its decision almost immediately thereafter and notified plaintiff that her claim for benefits had been denied. After plaintiff's administrative appeal was denied by defendant, she filed this action seeking review of the defendant's decision.[3] See 29 U.S.C. § 1132(a)(1)(B) ("A civil

---

[1]*This was a group policy provided to Mr. Howland by his employer, Bank of Oklahoma.*

[2]*Hydrocodone is a pain reliever. The parties refer to it by its brand names of "Lortab" or "Lorcet." Carisoprodol is a muscle relaxant. The parties refer to it by its brand name of "Soma."*

[3]*Plaintiff initially sought damages under Oklahoma law for the defendant's alleged bad faith,*
(continued...)

action may be brought by a . . . beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan."). Both parties have filed motions for summary judgment seeking judgment on the administrative record. [Doc. Nos. 35, 37 and 38].

For purposes of § 1132(a)(1)(B), this court sits as a quasi-appellate court in reviewing the decision of the plan administrator to deny benefits. The decision "'is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" Allison v. UNUM Life Ins. Co. of Am., 381 F.3d 1015, 1021 (10th Cir. 2004) (quoting Firestone Tire & Rubber Co. V. Bruch, 489 U.S. 101, 115 (1989)). If such discretion is granted, the administrator's decision is reviewed under an "arbitrary and capricious" standard and the court's review is "limited to the administrative record - the materials compiled by the administrator in the course of making [its] decision." Allison, 381 F.3d at 1021 (internal quotations omitted).[4]

The parties agree that the AD&D plan grants defendant the discretion to determine eligibility and construe its terms. Thus, this court applies an arbitrary and capricious

---

[3](...continued)
*negligence, breach of contract and fraud arising from the denial of benefits. The court concluded these claims were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 to 1461, and granted summary judgment for defendant on plaintiff's state law claims. Order of February 23, 2006.*

[4]*As this court's review is limited to the administrative record, deposition testimony and other evidence attached to the parties' motions has not been considered.*

standard of review to the defendant's actions. However, there also exists in this case an inherent conflict of interest as the defendant serves as both the insurer and administrator of the plan. See DeGrado v. Jefferson Pilot Financial Ins. Co., 451 F.3d 1161, 1167 (10th Cir. 2006) ("Jefferson, as both the insurer and the plan administrator, operates under an inherent conflict of interest"). Because of this conflict, the court must "undertake a sliding scale analysis where the degree of deference accorded to the [defendant] is inversely related to the seriousness of the conflict." Id. (internal quotations omitted). In the case of an inherent conflict, such as the one here, "the [defendant] must demonstrate that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence." Id. at 1168 (internal quotations omitted).[5] The court "must take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest." Fought, 379 F.3d at 1006.

Defendant based its denial of benefits on an exclusion contained within the AD&D policy which states:

> RISKS EXCEPTED - No benefits will be paid under this Policy for any loss which results directly or indirectly from:
>
> (H)   voluntary self-administration of any drug or chemical substance not prescribed by, and taken according to the directions of a licensed physician. (Accidental ingestion of a poisonous substance is not

---

[5]*Contrary to defendant's suggestion, the court in Fought v. UNUM Life Ins. Co. of Am., 379 F.3d 997 (10th Cir. 2004), did not suggest that a party is relieved of this burden simply because it utilizes a third party physician to review a decision denying benefits. See Fought, 379 F.3d at 1014-15.*

>excluded.)

Pl's. Ex. 2, tab 1. Defendant claims this exclusion applies because the evidence demonstrated that Mr. Howland did not take his medication as prescribed by his physician. Instead, based on the level of drugs in his bloodstream, it asserts he took well above the prescribed amount which resulted in his death. Plaintiff asserts that this exclusion applies only to non-prescribed medication or over the counter medication not taken according to the directions of a licensed physician. In addition, she argues that even if this exclusion applied to prescription medication, the evidence did not support the defendant's conclusion that Mr. Howland did not take his medication as directed by his physician. Because the defendant's denial of benefits was based on an exclusion in the policy, the burden falls on the defendant to prove facts supporting an exclusion of coverage by a preponderance of the evidence.[6] Fought, 379 F.3d at 1007.

Having reviewed the administrative record, the court concludes the defendant has failed to demonstrate its decision to deny benefits based on the exclusion was reasonable. In particular, the court concludes that, while the defendant's determination that Mr. Howland failed to take his medication in accordance with his prescriptions was reasonable, its interpretation and application of the policy exclusion to the circumstances of Mr. Howland's

---

[6]*The court rejects plaintiff's argument that the court's review is limited to the reasonableness of the defendant's initial decision to grant benefits. For purposes of ERISA, the court's function is to review the administrative record and determine the reasonableness of defendant's interpretation and application of the policy terms to plaintiff's request for benefits. As the defendant's initial decision to grant benefits is part of the administrative record, the court will consider it, along with all of the other evidence contained in the administrative record, in making its determination.*

death was not.

The record reflects that Mr. Howland had been under the care of a doctor and on "narcotic therapy" for chronic back pain for several years. As his pain and/or tolerance levels increased, the amount of medication prescribed to Mr. Howland was adjusted by his doctor. On several occasions, Mr. Howland took more medication than prescribed. See, e.g., Pl's. Ex. 2, tab 28, pp. 89, 94, 149-152. Near the time of his death, plaintiff called Mr. Howland's doctor to ask for assistance in preventing Mr. Howland from "overdosing" on his medication. Pl's. Ex. 2, tab 28, p. 86. The last prescription given to Mr. Howland by his doctor instructed him to take 2 tablets of Lortab three times a day and 2 tablets of Soma three times a day. Pl's. Ex. 2, tab 28, pp. 146-147. According to defendant's medical director, Mr. Howland "would have had to take 10 tablets at once" of Soma and "6 tablets at once" of Lortab to achieve the blood level found in his system at the time of death. Pl's. Ex. 2, tab 30, p. 247.[7] Based on this evidence, it was reasonable for defendant to conclude that Mr. Howland's death was a result of him taking more medication than prescribed by his doctor.[8] However, it is unclear that the policy in question could be reasonably interpreted to exclude loss attributable to taking prescribed medication in excess of that prescribed.

In interpreting the language of the exclusion, the court applies the "'standard tenets

---

[7]*According to the Oklahoma Medical Examiner's report, the level of Soma in Mr. Howland's bloodstream at the time of death was 15.4 mcg/ml. The level of Lortab in Mr. Howland's bloodstream was 0.14 mcg/ml. Pl's. Ex. 2, tab 17, p. 55.*

[8]*In making this reasonableness determination, the court did not consider the "pill count" taken by the investigator for the Medical Examiner's Office as this information does not appear to be part of the administrative record.*

of contract construction.'" Haymond v. Eighth Dist. Elec. Benefit Fund, 36 Fed. Appx. 369, 372 (10th Cir. May 28, 2002) (quoting Pirkheim v. First Unum Life Ins., 229 F.3d 1008, 1010 (10th Cir. 2000)).[9] The objective is to "to ascertain and carry out the true intention of the parties" to the plan by "giving the language its common and ordinary meaning as a reasonable person in the position of the plan participant, not the actual participant, would have understood the words to mean." Fought, 379 F.3d at 1008 (internal quotations and emphasis omitted). Any ambiguity in the terms of the plan is construed against the defendant as drafter of the plan. See, e.g., Frerking v. Blue Cross-Blue Shield of Kan., 760 F.Supp. 877, 880-81 (D. Kan. 1991) ("Under universally accepted principles of contract construction, ambiguities in an insurance contract are to be construed against the insurer."). An "ambiguity exists when a contract provision is reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of a term." Haymond, 36 Fed. Appx. at 373.

In this case, the language of the exclusion is ambiguous. Read literally, the exclusion appears to exclude loss related to non-prescribed drugs taken according to the directions of a licensed physician, a situation unrelated to the circumstances of Mr. Howland's death. The exclusion could also possibly be interpreted to exclude loss related to use of prescribed or non-prescribed drugs taken contrary to the directions of a licensed physician and/or any loss related to taking a non-prescribed drug. However, these interpretations essentially require

---

[9]*Haymond is an unpublished opinion cited for persuasive value pursuant to 10th Cir. R. 36.3(B).*

the court to rewrite at least some terms used in the provision. Unless rewritten, the exclusion does not logically or reasonably conform to the defendant's suggested interpretation that loss attributable to prescribed medication taken contrary to the directions of a licensed physician is excluded. Given that the exclusion specifically refers only to "non-prescribed" drugs, a reasonable policy holder would not understand the exclusion to preclude loss related to prescribed medication. As a result, the court concludes, based on the decreased level of deference associated with its review and the circumstances existing here, that the defendant's interpretation and application of the exclusion was unreasonable in this case. Accordingly, defendant's decision to deny plaintiff's claim for benefits under the AD&D policy is **REVERSED** and judgment is **GRANTED** in favor of plaintiff on the AD&D policy.[10]

---

[10]*After her husband's death, plaintiff also submitted a claim for life insurance benefits to defendant under a separate group term life policy. Defendant paid $312,000 in life insurance benefits to plaintiff. Plaintiff now states that she is entitled to an additional $16,000 award of life insurance benefits based on the defendant's alleged miscalculation of Mr. Howland's base salary which was discovered after this case was filed. Such a claim is not appropriate for disposition here. Plaintiff did not raise any claims related to the life insurance policy in her complaint and has never sought to amend her complaint to add such claims. In addition, she has not given the defendant the requisite opportunity to address this alleged underpayment through the administrative process. See, e.g., McGraw v. Prudential Ins. Co., 137 F.3d 1253, 1263 (10th Cir. 1998) (finding that "exhaustion of administrative . . . remedies is an implicit prerequisite to seeking judicial relief" under ERISA and a district court may generally waive exhaustion only when "resort to administrative remedies would be futile" or "when the remedy provided is inadequate") (internal quotations omitted). If indeed a mistake has been made by the defendant regarding the amount of life insurance benefits owed to plaintiff, the underpayment should be addressed and resolved by the parties through the normal claims process including, if necessary, appeals therefrom.*

**IT IS SO ORDERED**.

Dated this 21st day of August, 2006.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE